Battle, J.
 

 We differ with his Honor upon the question raised on the trial, as to the admissibility of proof of the custom or usage relied on by the plaintiff, to imply a contract in his favor. It is directly opposed to the principle laid down by the Court, in the case of JONES v. AlleN, 5 Ired. Rep. 473. That was an action brought by a physician, against the owner of a slave, for professional services rendered to the slave, while in the possession of a hirer, and at the instance of the hirer. In support of his action, the plaintiff offered to prove, that, in the section of country where the hiring took place, it was the universal custom for the owners, and not the hirers, to pay for medical attendance upon the slaves, but the testimony was rejected. This Court held that the testimony was properly rejected, and said that “ no doubt the liability of general and special owners of hired slaves, for the expenses of their maintenance and medicine during sickness, is often and perhaps generally the subject of contract between them. .But, without some stipulation on that point, the general rule of law must operate, and cannot be controlled by any understanding to the contrary, in particular neighborhoods.
 

 There was no established general custom on the point; for, if there was, that would be the law: but a mere local usage in a small part of the country cannot change the law, and give the plaintiffs an action against one man, when they
 
 *144
 
 are employed by another. So, in the case before us, it is ■not contended that the custom is a general one ; nor are the terms very generally defined. Whether it extends to hirers by the year, by the half year, by the month or the week, we are not informed. If to the latter, it is very unreasonable, and ought to be abolished by force of the maxim,
 
 ma-lm asus abolendus est
 
 But the decisive objection to the allowance of such, neighborhood customs is the uncertainty in relation to the proof of them, and the great inconvenience of having local laws, jn any part of the State, to regulate matters which ought to be the subjects of express contracts. But the counsel of the plaintiff relies, for the support of his action, upon certain passages in Starkie on Evidence, vol. 2, page 258-9, of 1st Am. edition: “Where parties have not entered into any express contract, a presumption nevertheless arises, that they meant to contract, and to. deal according to the general -usage, practice and understanding, if such exist, in relation to the subject matter.” And again: ■“ Where an agreement between parties is general and doubtful, the custom and usage of the country in which it was made, are freqently evidence of the terms upon which the parties meant to contract; for, in the one case, their silence •raises a presumption that they meant t-o be governed by the ■usual course of dealing in such -cases prevalent in the neighborhood.” We need not inquire whether Mr. Starkie’s doctrine be correct or not; for it is not at all applicable to the case. The parties here did enter into “ an express and specific contract,” which was neither general nor doubtful, and ¿therefore left nothing to be presumed or inferred.
 

 ' Judgment reversed, and a
 
 venire de novo
 
 .awarded.